GERALD DEAN OWENS *v.* STATE OF INDIANA

[No. 1-577A112. Filed March 22, 1978.]

*J. V. Boles, Kendall, Stevenson & Lowry,* of Danville, for appellant.

*Theodore L. Sendak,* Attorney General of Indiana, *Michael Gene Worden,* Deputy Attorney General, for appellee.

## STATEMENT OF THE CASE

LOWDERMILK, J.—Defendant-appellant Gerald Dean Owens appeals from his conviction for theft.[1]

### FACTS

On August 5, 1976 Owens was sitting in the Ex-cel service station in Hendricks County reading his newspaper, while the service station manager counted his receipts. When the manager finished counting the receipts he placed them in a paper bag and put the bag into a drawer. The manager then went out to wait on customers and to repair a door, leaving Owens alone in the front room of the station. While Owens was reading his paper another service station employee came in and out of the room a couple of times.

After having been in the service station for about 1½ hours, Owens took his newspaper and left. A few minutes later the manager discovered that the sack containing the service station receipts of more than $500 was missing.

The manager called the state police, who in turn contacted Owens and asked him if he would submit to a polygraph or lie detector test. Owens agreed to take the lie detector test, which was administered by Sergeant John Danberry of the Indiana State Police. Prior to taking the lie detector test Owens signed a waiver of rights form. He also signed a written stipulation wherein he and the Hendricks County prosecutor, Seth Lewis, purportedly agreed that Sergeant Danberry was a qualified polygraph examiner and that Danberry's questions, Owens' answers and reactions and Danberry's opinion as to the meaning of Owens' answers and reactions could be received into evidence on behalf of either Owens or the State. The written stipulation was signed by Owens and by Danberry but not by the prosecutor, Lewis.

The results of Owens' polygraph examination were interpreted by Danberry to mean that Owens was lying when he said that he did not steal the money. At trial the results of the lie dectector test were admitted over Owens' objection on the basis of the stipulation executed by Owens and the State. The only other evidence presented at trial

---

1. See IC 1971, 35-17-5-3 (Burns Code Ed.)

which tended to show Owens' guilt was the testimony of the service station manager that Owens was the only one, besides the manager, who was alone in the front office of the service station prior to the discovery of the disappearance of the money, and the testimony of certain persons who testified that Owens paid off some overdue debts shortly after the time of the theft.

## ISSUE

The issue which has been presented to this court for review is as follows:

1. Whether the trial court erred in allowing the results of the lie detector test to be introduced into evidence.

## DISCUSSION AND DECISION

As a general rule the results of a lie detector test are not competent evidence and are, therefore, inadmissible at trial. See *Zupp v. State* (1972), 258 Ind. 625, 283 N.E.2d 540, and *Vacendak v. State* (1976), 264 Ind. 101, 340 N.E.2d 352. However, where all the parties by stipulation have waived any objection concerning the competency of the results of a lie detector test, the court may allow the results of that test to be admitted into evidence. See *Moore v. State* (1977), 267 Ind. 270, 369 N.E.2d 628, and *Vacendak, supra.*

In *People v. Potts* (1966), 74 Ill.App.2d 301, 220 N.E.2d 251, 252-253, the Appellate Court of Illinois quoted from *State of Arizona v. Valdez* (1962), 91 Ariz. 274, 371 P.2d 894, 900, wherein the Supreme Court of Arizona set forth certain prerequisites which must be met before the results of a polygraph test can be admitted into evidence, *id est*:

"* * *

'(1) That the county attorney, defendant and his counsel [2] all sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either defendant or the state.

---

2. The defendant's counsel would be required to sign the stipulation only when a defendant's 6th amendment right to counsel has already attached and where the defendant has not waived such right to counsel.

(2) That notwithstanding the stipulation the admissibility of the test results is subject to the discretion of the trial judge, i. e. if the trial judge is not convinced that the examiner is qualified or that the test was conducted under proper conditions he may refuse to accept such evidence.

(3) That if the graphs and examiner's opinion are offered in evidence the opposing party shall have the right to cross-examine the examiner respecting:

    a. the examiner's qualifications and training;

    b. the conditions under which the test was administered;

    c. the limitations of and possibilities for error in the technique of polygraphic interrogation; and

    d. at the discretion of the trial judge, any other matter deemed pertinent to the inquiry.

(4) That if such evidence is admitted the trial judge should instruct the jury that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged but at most tends only to indicate that at the time of the examination defendant was not telling the truth. Further, the jury members should be instructed that it is for them to determine what corroborative weight and effect such testimony should be given.' " (Our footnote inserted)

The prerequisites for the use of polygraph test results set forth in *Valdez, supra,* largely reflect the law today in Indiana on the subject. Since *Valdez, supra,* sets forth such prerequisites in a succinct and well reasoned manner, we have referred to them and now adopt them in their entirety.

In the case at bar Owens signed a form which was purported to be a stipulation on the part of Owens and on the part of the Hendricks County prosecutor, Seth Lewis, wherein both parties waived any objection to the admissibility of the results of the lie detector test. However, neither Seth Lewis, nor any officially recognized representative from his office signed the purported stipulation. Because of the prosecutor's failure to sign the written stipulation the State was not bound by the purported agreement; therefore, the purported agreement was rendered unenforceable.

It is correct, as the State contends, that Owens signed a separate form wherein he waived his right against self incrimination in general. However, such waiver of the right against self incrimination does not waive a defendant's right to object to the use of incompetent polygraph test results. Such must be done in a separate written stipulation signed by all the necessary parties.

Since no enforceable written stipulation was made between the parties in the case at bar, the results of the lie detector test were incompetent evidence, and the trial court erred in allowing those results to be admitted into evidence. In light of the circumstantial nature of the other evidence which was presented at trial, we cannot say with certainty that the error in the admission of the lie detector test results was not prejudicial. Therefore, we must remand this case for a new trial.

Reversed and remanded for new trial.

Lybrook, P.J. and Robertson, J. concur.

NOTE—Reported at 373 N.E.2d 913.