Dennis C. SLAGLE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 3–1078A289.

Court of Appeals of Indiana,
Third District.

Aug. 29, 1979.

David D. Wilson, Hartford City, for appellant.

Theo. L. Sendak, Atty. Gen., Robert J. Black, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Dennis C. Slagle was convicted by jury of the crimes of theft as charged in Count II of the information and the lesser included offense of theft of property of a value less than $100 under Count I of the information.[1] He was sentenced to serve one to five years imprisonment at the Indiana Department of Correction on each Count.

On appeal, Slagle raises four issues for our consideration. Did the trial court err when it:

(1) refused Slagle's request to file an amended motion to correct errors;

(2) allowed into evidence a written memorandum of Slagle's prior criminal activity;

(3) allowed the police officer who administered the polygraph test to testify as an expert; and

(4) allowed into evidence the results of a polygraph test administered to Slagle after he signed a *Miranda* waiver form and consent form to the test?

We reverse.

The facts relevant to our disposition of the case are as follows. During the early morning hours of June 2, 1977, Charles Miller saw a man with a beard carry a C.B. radio and another item from his neighbor's pick-up truck. The man took the radio in the direction of some Conrail sleeping cars parked on a nearby railroad line. The same morning James Ousnamer saw a long-haired man a few feet from his garage. By the time Ousnamer had gotten dressed and outside, the man had disappeared. Ousnamer started to look for him. During his search, he heard a noise he described as sounding "like fishing poles clashing" coming from some railroad cars parked on a nearby rail line. When Ousnamer returned home, he discovered two fishing poles had been stolen from his garage.

The police, who had been summoned by Ousnamer, searched the railroad yard where he had heard the noise. They discovered his fishing poles and a lantern in a sleeping car in which Slagle was lying on a bunk. Underneath a nearby railroad car, the police found a C.B. radio, belonging to Miller's neighbor.

On appeal, Slagle urges that the trial court erred in (1) refusing his request to file an amended motion to correct errors and (2) allowing into evidence a written memorandum of his prior criminal activity. Due to Slagle's failure to set out a specific argument applicable to each of these errors

---

1. IC 1971, 35–17–5–3(1)(a) and (2)(a):

"A person commits theft when he (1) knowingly:

"(a) obtains or exerts unauthorized control over property of the owner; or

    *    *    *    *    *    *

"(2) either:

"(a) intends to deprive the owner of the use or benefit of the property . . . ."

This statute has been replaced by IC 1971, 35–43–4–2 (Burns Code Ed., Repl., Vol. 1979).

raised on appeal, they are deemed waived.[2] Neither legal argument nor authority were cited in support of his contentions. We will not address assertions of error which are unsupported by argument or authority. *Southerland v. Calvert* (1974), 162 Ind.App. 606, 320 N.E.2d 803.

■ Slagle next contends that the court erred in allowing the police officer who administered the polygraph test to testify as an expert. An expert can be "qualified" by evidence of formal training or practical experience. *Culley v. State* (1979), Ind.App., 385 N.E.2d 486. This determination is within the sound discretion of the trial court and will not be set aside unless there is a showing of abuse of discretion. *Niehaus v. State* (1977), 265 Ind. 655, 359 N.E.2d 513.

■ The record reveals that Officer Yohn administered the polygraph test. He testified that he had attended the Keeler Polygraph Institute for one year, six weeks of which had consisted of in-house training. For the correspondence portion of the training, Officer Yohn had completed 150 examinations with Institute supervision. He had also attended the Institute for an advanced training session. Officer Yohn had conducted 260 polygraph examinations prior to Slagle's trial.

We conclude that the trial court did not abuse its discretion in finding the training and background of Officer Yohn were sufficient to qualify him as an expert. The extent of his experience is more properly addressed to the. weight of. his testimony. *Blair v. State* (1977), Ind.App., 364 N.E.2d 793.

Slagle finally contends that the trial court erred in allowing the results of the polygraph examination, administered to Slagle after he signed a *Miranda* waiver form and a consent form to the test, into evidence. We agree.

■■ Generally, the results of a lie detector test are incompetent evidence and, as such, inadmissible at trial. *Vacendak v.*

*State* (1976), 264 Ind. 101, 340 N.E.2d 352. However, where all the parties, by stipulation, have waived any objection concerning the competency of the results of a polygraph test, the court may admit the results into evidence. *Owens v. State* (1978), Ind. App., 373 N.E.2d 913. There, the court said that the defendant's signing of a *Miranda* rights waiver form did not act as a waiver of his right to object to the use of incompetent polygraph test results. Such a waiver can be accomplished only by a written stipulation signed by the State, the defendant and his counsel. *Owens, supra,* at 915.

Our Supreme Court in *White v. State* (1978), Ind., 381 N.E.2d 481 impliedly adopted the strict waiver requirements articulated by the *Owens* court. There, in a waiver hearing, the defendant clearly waived her right to object to the admission of the results of a polygraph test. Not only was the defendant closely questioned as to her understanding of the waiver by her own counsel, but the court carefully questioned her as well. The court asked her in a number of different ways whether she understood that without her waiver, the results of the test would be inadmissible. *White, supra,* at 484, n. 1.

In the case at hand, Slagle signed the following two-part waiver form.

"I, *s/ Dennis Charles Slagle*, do hereby request, voluntarily, without duress, coercion, threats, promises of reward or immunity, to be examined by the Keeler Polygraph (lie detector) detection of deception technique. I understand that operation of this device involves the use of electronic apparatus for the recordation of emotional and vocal responses. I have had the nature of this examination explained to me, and do hereby consent both to the placing of the necessary apparatus upon my person, and to the use of any electronic hearing or recording devices operated contemporaneously with this examination. I do hereby release and forever hold harmless the Sheriff of Elkhart County, the Elkhart County Sheriff's Department, their agents and

---

2. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).

employees, from any liability flowing either from the operation of the devices or use of the results obtained therefrom. I further agree that the results of this examination may be made available to proper authorities."

\* \* \* \* \* \*

"I have the right to remain silent, anything I say can be used against me in a court of law. I have the right to talk to a lawyer and have him present with me while I am being questioned. If I cannot afford to hire a lawyer, one will be appointed to represent me free of charge, before any questioning. I have been asked if I understand each of these rights that have been explained to me, and my answer is YES. I also have been asked, that having these rights in mind, do I wish to talk to the police at this time, and my answer is YES."

■ The State urges that the last sentence of the consent form, "I further agree that the results of this examination may be made available to proper authorities," should be read in conjunction with the first sentence of the waiver of rights form, "I have the right to remain silent, anything I say can be used against me in a court of law," to show waiver. We disagree. The record fails to show that Slagle fully appreciated the fact that the results of the test would have been inadmissible had he not waived his right to object. We conclude that his signing of the consent forms did not serve as a valid waiver of his right to object to the introduction of the polygraph test results.

■ In view of the circumstantial nature of the other evidence at trial, we cannot be certain that the error in the admission of the polygraph test results was harmless. Therefore, we must remand for a new trial.

Reversed and remanded for a new trial.

GARRARD, P. J., concurs.

HOFFMAN, J., concurs in result with opinion.

HOFFMAN, Judge, concurring in result.

I concur in the result.

Our Supreme Court in *White v. State* (1978), Ind., 381 N.E.2d 481, *did not* impliedly adopt the requirement set out in *Owens v. State* (1978), Ind.App., 373 N.E.2d 913. *Owens v. State, supra*, addressed itself to a written stipulation by the prosecuting attorney and the defendant regarding the introduction of the results of a polygraph test. It did not discuss or address itself to a waiver by the defendant of an objection to a polygraph test being admitted.

The Supreme Court in *White v. State, supra*, 381 N.E.2d at 484, stated, " 'some form of waiver' is all that is required." In that case it permitted the introduction of a polygraph test since the defendant in open court and being questioned by her attorney and the court expressly waived and agreed to allow the results of a polygraph test into evidence. The Supreme Court in *Reid v. State* (1972), 259 Ind. 166, 285 N.E.2d 279 expressly approved a written waiver which permitted a polygraph examination into evidence. In that case the verified petition for polygraph examination included the following provision:

" 'That said defendant does hereby expressly waive any and all objections, and unequivocally agrees that the said Report, may become a part of the Record in said Court, as well as becoming an exhibit in Defendant's trial, as well as to stipulate taking the said Expert's Deposition by interrogatories (or otherwise) or to testify in open Court.' "

285 N.E.2d at 281.

In the present case the waiver form signed falls short of the waiver approved in *Reid v. State, supra*. A reading of the waiver in this case could well be interpreted as a release from liability to the Sheriff of Elkhart County and the Elkhart County Sheriff's Department. There is no mention as to waiver of the objection to the polygraph test being used at trial. I therefore join in the conclusion that the admission of the polygraph test over objection was error.