EVERETT OSBORNE, JR. *v.* STATE OF INDIANA.

[No. 677S468. Filed May 12, 1978.]

*Harriette Bailey Conn,* Public Defender of Indiana, *David P. Freund, Bobby Jay Small,* Deputy Public Defenders, for appellant.

*Theodore L. Sendak,* Attorney General, *Elmer Lloyd Whitmer,* Deputy Attorney General, for appellee.

DEBRULER, J.—This is an appeal from convictions for commission of a felony, robbery, while armed and for kidnapping, in violation of Ind. Code § 35-12-1-1 (Burns 1975), and Ind. Code § 35-1-55-1 (Burns 1975) both repealed October 1, 1977. Osborne was assessed a term of fifteen years for armed robbery and a term of life for kidnapping. On appeal he raises three issues:

(1)  whether the trial court erroneously permitted evidence of a conversation between the alleged victim and Osborne occurring before the robbery and kidnapping;

(2)  whether the evidence of kidnapping is sufficient; and

(3)  whether the life sentence imposed for kidnapping constituted cruel and unusual punishment.

The circumstances on which the verdicts were reached were these. Osborne entered into a conversation with the alleged victim Arnold and another man named Smith in a bar in Seymour. Osborne offered to sell some handguns to Arnold but Arnold declined. When the bar closed, at Osborne's request, Arnold agreed to give him a ride home to the vicinity of Laurel Street, and on reaching that area, Osborne jumped in the back seat of the car, drew a gun and ordered Arnold to give up his wallet. The car was driven on a short distance where on order the car was stopped and Arnold was made to get out and open the trunk. He did so while appellant held the gun at his ear. Some beer was taken from the trunk and the drive then continued on for more than a mile when appellant ordered the car stopped again. He then told Arnold that he would blow his head off, and fired three shots with the .22 caliber pistol he held into the roof of the car. Osborne then drew a .44 caliber pistol and aimed it at Arnold's head and fired, missing Arnold but shattering the glass window of the car next to Arnold. Apparently Osborne did not intend to kill Arnold with this shot, but only to frighten him. The car was

then started again and the ride ended up in a trailer park where appellant got out and told Arnold not to go to the police or he would be killed. Arnold left the park and reported the crime.

## I.

During the testimony of the victim Arnold at trial he gave the following account of some of the conversation which had occurred prior to the crime between the three men as they drank together at the bar.

"Q. What did you talk about?

A. We talked about when I was acquainted with a guy in North Vernon, he was a guard for the railroad express and the train had come from Cincinnati to North Vernon and would leave off this strong box that had money in it. Bill Derringer opened it up and showed it to me and Blackie Smith and I was telling him about that and he said- - -

BY ROBERT L. HOUSTON III: Your honor, we would object to this entire answer as being irrelevant, it does not prove or disprove any point in issue here, it is absolutely irrelevant.

BY THE COURT: Overruled, you may proceed.

A. He said no way anybody would have that much money without him gettin' it.

BY JEFFREY A. NIERMAN:

Q. Did you talk about anything else?

A. I said you would have never got it because you would probably get killed, he says, no way and anyway Blackie Smith said that was right, there was no way he could have got that money, he said if somebody has got money I am going to get some of it- - -

BY ROBERT L. HOUSTON III: Your honor, again we would object, the fact that the man said he was going to do something else or could possibly do something else is certainly not relevant to the commission of this crime or any circumstances connected with the facts that need to be proved or disproved at this trial. I maintain further that they are only brought out to prejudice the jury.

BY THE COURT: Your objection as stated is overruled. The comment that the witness made with regard to

what a third person other than this witness or the defendant said, I order that you disregard that comment as made by the third person, that is the person other than this witness or the defendant. You may proceed."

Osborne contends that the conversation including his own statements were irrelevant and highly prejudicial and their introduction denied appellant a fair and impartial trial. We agree that it was error for the court to permit this conversation over the relevance objection. In *Magley* v. *State,* (1975) 263 Ind. 618, 335 N.E.2d 811, we said:

"The fact that a piece of evidence makes an inference slightly more probable suffices to show its relevance." 335 N.E.2d at 825.

The subject under inquiry at this trial was whether Osborne was guilty of those charges. The statements of Arnold regarding the strong box and Osborne's responses did not relate at all to issues presented. The statement cannot be justified as necessary to complete the story of the crime. *Maldonado* v. *State,* (1976) 265 Ind. 492, 355 N.E.2d 843. The conversation cannot be deemed admissible as threatening words accompanying a criminal act. *Lineback* v. *State,* (1973) 260 Ind. 503, 296 N.E.2d 788. Osborne's responses were not an indivisible part of an otherwise relevant conversation. *McFarland* v. *State,* (1975) 263 Ind. 657, 336 N.E.2d 824; *Cunningham* v. *State,* (1971) 256 Ind. 135, 267 N.E.2d 181. The matter could not be legitimated as showing Osborne's character, as that was not a proper subject of inquiry. *Fletcher* v. *State,* (1874) 49 Ind. 124. The State contends that the conversation was relevant to show "intent and motive." We disagree. The only intent and motive under inquiry was that of Osborne to rob and kidnap Arnold and the statements attributed to Osborne did not make the existence of such states of mind more probable. The objection on relevancy grounds should have prevailed.

Having concluded that irrelevant evidence was admitted erroneously at trial, the appropriate appellate remedy must

be determined. Reversal in every such instance is not called for. The appropriate standard to be applied on appeal in such instances as this is supplied by Ind. R.Ap. P. 15(E), which forecloses reversal "where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below." Each element of robbery and kidnapping was proved by an abundance of evidence including the testimony of Arnold, the physical condition of his car, the testimony of a friend of Osborne to whom he fled immediately after the events who testified that Osborne came into her trailer, threw some money down and said that he had shot the windshield of a car out, and the introduction of the two handguns belonging to appellant from which it was shown that the shots in the car had been fired. The conversation at the bar would not have affected to any degree the credibility of Arnold as a State's witness. And finally we believe the trier of fact would have discounted the conversation to some degree as being the boastful talk of men drinking in a bar. Upon consideration of the evidence as a whole, we have no doubt that Osborne received a fair and impartial trial with the irrelevant evidence of the conversation available to the jury.

## II.

Osborne next contends that the evidence of kidnapping was insufficient in that the drive at gunpoint was incidental to the crime of robbery and did not constitute a separate crime of kidnapping. The argument made is not compelling in light of the evidence supporting the jury verdict. The robbery was completed early on in the events in the car, namely at the time of the first stop when the beer was taken from the trunk. The victim was required to drive on for several miles thereafter and during this drive was required to stop and start the car for the second time and during the following part of the drive appellant carried out his design to threaten, menace and terrify his victim in order to prevent a report of the crime. The verdict of the

jury finding appellant guilty of the separate crime of kidnapping was supported by sufficient evidence.

### III.

Appellant contends that the life sentence for kidnapping is cruel and unusual punishment proscribed by Article 1, § 16 of the Indiana Constitution, and the Eighth Amendment to the United States Constitution. He first argues that life imprisonment for kidnapping is constitutionally infirm because the statute offers no alternatives to that sentence. Whether or not a sentence should be tailored to fit the individual offender and the particular crime is a question entrusted to the Legislature and not to the courts. *Parker* v. *State,* (1977) 265 Ind. 595, 358 N.E.2d 110. Appellant points out that the new penal code has abandoned the mandatory life sentence for kidnapping, effective October 1, 1977. We find that such historical fact does not support appellant's basic argument. Appellant relies upon the cases of *Trop* v. *Dulles,* (1958) 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630, and *Weems* v. *United States,* (1910) 217 U.S. 349, 381, 30 S.Ct. 544, 554-55, 54 L.Ed. 793, where the Supreme Court said referring to the Eighth Amendment:

> "The Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society."
> "The purpose of punishment is fulfilled, crime is repressed by penalties of just, not tormenting, severity, its repetition is prevented, and hope is given for the reformation of the criminal."

A number of sister states are identified as having rejected the punishment of mandatory life for kidnapping. We do not find the presence of these legislative judgments in other states, to establish a standard of decency which condemns the life sentence for kidnapping as cruel and unusual punishment.

· The convictions are affirmed.

Givan, C.J., Hunter, Prentice and Pivarnik, JJ., concur.

NOTE.—Reported at 375 N.E.2d 1094.